**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **THERESA L. MIDDLETON,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | **No. 16 CV 11136** |
| **v.** ) | |
| ) | **Magistrate Judge Michael T. Mason** |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of the U.S. Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Theresa Middleton ("Claimant") filed a motion for summary judgment

seeking reversal of the final decision of the Commissioner of Social Security

("Commissioner") denying her claim for disability benefits.  The Commissioner has filed

a cross-motion asking the Court to uphold the decision of the Administrative Law Judge

("ALJ").  For the reasons set forth below, Claimant's motion for summary judgment (Dkt.

12) is granted and the Commissioner's motion for summary judgment (Dkt. 15) is

denied.

**I.  Background**

**A.  Procedural History**

Claimant filed her application for Disability Insurance Benefits ("DIB") on January

13, 2010, alleging that her disability began on December 26, 2008.  (R. 157-63.)

Claimant's applications were denied initially and on reconsideration.  (R. 85, 98.)

Claimant requested a hearing before an ALJ, which was held on October 11, 2011.  (R.

53-84.)  On October 31, 2011, the ALJ issued a written decision finding that Claimant

was not disabled. (R. 566-77.) On April 18, 2013, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 1-6.) Claimant filed a complaint on June 18, 2013. Magistrate Judge Kim issued an opinion ordering remand on November 9, 2015. (R. 603-29.) A second hearing was held on August 16, 2016. (R. 528-62.) On August 26, 2016, the ALJ issued a new written decision finding that Claimant was not disabled. (R. 506-27.) This action followed.

### B. Relevant Medical Evidence

#### 1. Treating Physicians

Claimant's primary care physician, Dr. Jose Penaherrera, referred Claimant to Dr. Thomas Hurley, a neurosurgery specialist, in 2004. (R. 192). Dr. Hurley ordered MRIs and CT scans of Claimant's cervical spine, which showed multiple areas of ventricle epidural defect present at C3-4, C5-6, and C6-7. (R. 438-40.) Claimant also had canal narrowing, posterior marginal osteophytes, and likely disc bulges. (R. 438.) A CT scan showed mild, moderate, and severe loss of disc height, as well as posterior ridging. (R. 440.) Dr. Hurley then performed a C4-C7 cervical spine fusion surgery in 2004. (R. 376, 397, 438-39.) A post-surgery MRI showed that Claimant's spinal stenosis was resolved, and her spine was in "good alignment." (R. 424.) However, the MRI also revealed prominent disc bulging at C3-C4, as well as left central intervertebral foraminal narrowing at C6-C7. (R. 424.) Dr. Penaherrera ordered x-rays in 2004 and 2005, and the x-rays also showed that Claimant's fusion was "stable" and her vertebra were in good alignment. (R. 409.) Dr. Hurley ordered another CT scan in February of 2006, which showed moderate central spinal stenosis, bony spurs, moderate right and

left paracentral compression, moderate central spinal stenosis, and mild left neural foraminal stenosis.  (R. 419-20.)  Dr. Hurley then performed a fusion surgery at C3-C4.  (R. 419-23.)  Post-operative imaging showed normal height and alignment of the vertebral bodies, but also showed prevertebral soft tissues, slight foraminal narrowing on the left side of C6-C7 due to bony hypertrophy, as well as a possible hematoma.  (R. 407-08, 417.)  Dr. Penaherrera ordered imaging two months later and found the plates and screws in C3 through C7 were in good position with no loosening.  (R. 406.)

Claimant went to the ER in March of 2009 with complaints of neck pain, right arm numbness, low back pain, and right leg pain.  (R. 302.)  While in the hospital, Dr. Hurley prescribed pain medication and a muscle relaxer and recommended she not work until further evaluation.  (R. 301-02.)  Dr. Amy Weierman ordered imaging of Claimant's cervical spine, and noted mild degenerative change with no disc herniation, as well as a mild osteophyte protruding to the right paracentral region at the C5-6 level.  (R. 404.)  In April of 2009, Dr. Hurley reviewed an MRI of Claimant's lumbar spine, and found straightening of the normal lumbar lordosis, lesions in the spine and sacrum consistent with hemangiomas, Schmorl's nodes, disc desiccation, mild disc height loss, and mild facet arthropathy.  (R. 259.)  Ten days later, Dr. Hurley noted that Claimant tested positive for pain on her right side during the FABER test and straight leg raise test.  (R. 292-94.)  Dr. Hurley then recommended physical therapy and electromyography ("EMG") to help Claimant with her continued pain and opined that Claimant could not work until re-evaluation in May.  (R. 294-95.)

Claimant attended physical therapy in the summer of 2009, and during this time Dr. Hurley diagnosed her with sciatica and arthropathy.  (R. 286-95.)  Claimant

continued to complain of pain and stiffness, with pain ranging from four out of ten to nine out of ten during that time.  (*Id.*)  In September of 2009, Claimant again went to the ER complaining of severe neck pain after a fall.  (R. 282-85.)  Claimant returned to physical therapy after this visit.  (R. 281.)  Claimant continued to complain of low back, leg, and neck pain.  (R. 276.)  Dr. Hurley ordered further imaging in January of 2010, which showed normal alignment with no disc herniation.  (*Id.*)  However, the imaging also showed disc dehydration at L4-5 and L5-S1, as well as moderate facet arthrosis at L4-5 bilateral and L5-S1 bilateral.  (*Id.*)  Dr. Hurley recommended home exercise and a pain management program and indicated that Claimant was on complete temporary disability.  (*Id.*)  Dr. Hurley opined that further surgeries on Claimant's neck or back would be unreasonable given the degeneration, and he suggested weight loss or epidural steroid injections ("ESI") to manage her symptoms.  (R. 277.)  Later in January, Dr. Hurley noted that Claimant had arthritis in her facet joints, which may be the cause of her lower back pain.  (R. 272.)  He again noted that surgery was not an option due to the arthritic facet joints, and continued to recommended injections and weight loss.  (*Id.*)

In March of 2010, Claimant returned to the ER with complaints of pain across her upper back and chest, along with pressure and dizziness. (R. 312, 250.)  The attending physicians at the hospital did not believe Claimant's pain was cardiac related based on the results of the electrocardiogram ("ECG"), nuclear stress test and perfusion scan. (R. at 314-17, 336, 359-60.)  Claimant did, however, have abnormal ECG signals.  (R. 337-39.)  Based on these results, Dr. Hurley put Claimant's pain clinic visit on hold because he opined that her chest pain could be related to her spine, as her cardiologist did not believe she suffered a heart attack.  (R. 389, 485.)  In December of 2010, Dr.

Hurley again opined that Claimant would be unable to return to work either full time or part time due to her multiple surgeries and her continued lower back pain.  (R. 483.)

In April of 2011, Claimant saw pain specialist Dr. Faris Abusharif.  (R. 492.) Claimant complained of pain ranging from five to seven out of ten.  (R. 493.)  At this visit, Dr. Abusharif noted a positive "supine SLR," "painful lumbar muscles with flexion," and a "decreased temperature sensation" and decreased sensation to pin prick.  (R. 493-94.)  Although Claimant received several ESIs, she continued to report moderate to severe pain.  (R. 478, 489.)  She also stated that the pain was aggravated by sitting, standing, and walking.  (*Id.*)  In July of 2011, Claimant underwent a nerve conduction study, ordered by Dr. Penaherrera and performed by Dr. Sreepathy Kannan.  (R. 488.) Dr. Kannan noted that the study was limited because Claimant's legs were severely swollen.  (*Id.*)  Swelling was also noted at an August 2011 doctor visit.  (R. 273-74.)

## 2. Agency Consulting Physicians

In April of 2010, Dr. Sarat Yalamanchili conducted a consultative exam.  (R. 397-99.)  Dr. Yalamanchili noted that Claimant's neck was stiff with limited range of motion. (*Id.*)  He also noted that Claimant appeared to be in pain while doing range of motion for her lumbar and cervical spine, and her straight leg testing was impaired due to low back pain.  (*Id.*)  Claimant had a normal gait, normal handgrip, and normal muscle strength in the lower extremities.  (*Id.*)  Dr. Yalamanchili opined that Claimant's neck pain may be related to her history of cervical fusion, and that her low back pain may be related to her history of degenerative disc diseases.  (R. 400.)

Dr. Francis Vincent, an agency consulting physician, conducted an RFC assessment based on Claimant's medical record.  (R. 453-60.)  Dr. Vincent opined that

Claimant could lift twenty pounds occasionally, ten pounds frequently, could stand and/or walk for six hours in an eight-hour workday, and could sit for six hours in an eight hour workday. (*Id.*) He also limited Claimant to occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds. (*Id.*) Upon reconsideration, Dr. Richard Bilinsky, confirmed Dr. Vincent's opinion with no explanation or discussion other than noting that Claimant reported that humidity aggravated her back pain. (R. 461-63.)

### C. Claimant's Testimony

On August 16, 2016, Claimant appeared with counsel at the second hearing and offered the following testimony. Claimant lived with her husband, son, and daughter in law. (R. 534.) She stopped working in 2008 when she became unable to perform her duties as a cashier and customer service representative at Sears. (R. 532-33.) When asked about her swollen legs, Claimant stated that her swelling was "nothing like it was" and was under control with compression stockings when needed. (R. 534.) Claimant also stated that she was prescribed Norco, but she disliked taking it because it made her tired. (R. 535.) Due to her medication side effects, Claimant claimed that she napped regularly. (R. 539.) Claimant could put her clothes in the washing machine but could not transfer them to the dryer, and she could fold the laundry but not put it away. (*Id.*) Her husband helped her with chores she could not complete. (*Id.*) Claimant also stated that she had difficulties cooking because she could not bend or carry heavy pots and pans. (R. at 535-36.) Claimant asserted that she could go grocery shopping, but only if she used the shopping cart as a walker. (*Id.*) As for hobbies, Claimant stated

that she liked to sew and read books, but that she could no longer sew due to a loss of feeling in her fingers. (*Id.*)

Looking back on the relevant period, Claimant testified that her pain was at a six or seven out of ten, and that none of her treatment options helped her pain long term. (R. 540.) Claimant also stated that she had a twenty-five-pound weight restriction given by Dr. Hurley. (R. 541.) Moreover, she could only stand for fifteen to twenty minutes at a time, she could only walk for a block, and could only sit in an office chair for ten or fifteen minutes at a time. (*Id.*) Claimant also asserted that she could not "swivel" in an office chair, and that she needed the ability to get up and walk around as needed to alleviate her back pain. (R. 544.) Claimant testified that she had discussed further surgery with Dr. Hurley, but that he would not do the surgery because he could not guarantee it would improve her quality of life. (R. 545-46.)

### D. Vocational Expert Testimony

Vocational Expert ("VE") Steven Sprower also appeared at the hearing. The ALJ asked the VE to consider someone of Claimant's age, education, and work history who could perform light work with no climbing of ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching or crawling; and occasional work around hazards such as dangerous, moving machinery or unprotected heights. The VE stated that such an individual would be precluded from Claimant's past work, but could perform work as a routing clerk, marker, or cashier. (R. 554-55.) Next, the ALJ asked the VE to keep the functional limitations except change light work to sedentary work. The VE testified that such an individual could perform work as a table worker, microfilming document preparer, or a food and beverage order

clerk.  (R. 556.)  The ALJ then asked the VE what skills would transfer to the sedentary level, and the VE stated that Claimant's record-keeping skills, supervisory skills, customer service skills, and inventory management skills would transfer into sedentary jobs.  (R. 556-57.)  The VE stated that such skills would transfer to jobs such as order clerk and telephone solicitor.  (*Id.*)

### E.  Prior ALJ Decisions and District Court Remand Opinions

In the first 2011 decision denying Claimant's DIB claim, the ALJ found that Claimant had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with the following limitations: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking at least six hours in an eight-hour workday; sitting with normal breaks for about six hours in an eight-hour workday; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, or crawling.  Additionally, Claimant may occasionally work around hazards such as dangerous moving machinery or unprotected heights.  (R. 569-70.)  The ALJ determined that Claimant was capable of performing past relevant work as a convenience store manager or customer service worker.  (R. 575.)  Moreover, the ALJ found that Claimant could perform other work in the national economy, including in the positions of cleaner/housekeeper, cashier, and information clerk.  (R. 576.)  In assessing opinions, the ALJ gave minimal weight to Claimant's treating neurosurgeon, Dr. Thomas Hurley, M.D., finding his opinion conclusory, poorly supported, and inconsistent with the medical record.  (R. 575.)  The ALJ gave great weight to the assessment of both state agency medical consultants.  (*Id.*)

On appeal, Judge Kim remanded Claimant's case to the Commissioner for further proceedings. *See Middleton v. Colvin*, No. 13 CV 4483, 2015 WL 6859169 (N.D. Ill. Nov. 9, 2015). Judge Kim instructed the ALJ to: reassess Claimant's credibility, discussing all of the evidence; discuss the factors in 20 C.F.R. § 404.1527(c) in weighing the treating doctor's opinion; provide a full analysis of the inconsistencies alleged between Dr. Hurley's opinion and the medical evidence; and explain why the reviewing state agency opinions were entitled to greater weight than Dr. Hurley's. Judge Kim did uphold the ALJ's discussion of the combination of Claimant's impairments.

## II. Analysis

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an

adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for DIB, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the

claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here, the ALJ applied the five-step process to reach her decision denying Claimant's application for benefits. First, the ALJ noted that Claimant met the insured status requirements through June 30, 2012. (R. 511.) Then, at step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date of December 26, 2008. (*Id.*) At step two, the ALJ determined that Claimant had the severe impairments of status post cervical fusion, cervical stenosis with sciatica, degenerative disc disease of the lumbar spine, coronary artery disease, and obesity. (*Id.*) The ALJ found that Claimant's hypertension and high cholesterol were non-severe. (R. 512.) At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (*Id.*)

The ALJ went on to assess Claimant's RFC, finding Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), with the following limitations: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking at least six hours in an eight-hour workday; sitting with normal breaks for about six hours in an eight-hour workday; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, or crawling. Additionally, Claimant may occasionally work around hazards such as dangerous moving machinery or unprotected heights. (R. 513.) At step four, the ALJ determined that Claimant would be unable to perform any past relevant work. (R. 519.) Finally, the ALJ found that there were jobs that existed in

significant numbers in the national economy that Claimant could perform, such as routing clerk, marker, and cashier. (R. 520)

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. Specifically, Claimant argues that the ALJ erred in evaluating the opinion of the treating neurosurgeon, that the ALJ improperly evaluated Claimant's mental RFC, and that the ALJ erred in evaluating Claimant's subjective allegations. We address Claimant's argument below, ultimately finding that this matter should be remanded.

### C. The ALJ Improperly Weighed the Opinion of Claimant's Treating Neurosurgeon in Violation of the Previous Court Order.

Claimant contends the ALJ improperly gave "minimal weight" to the treating neurosurgeon. Claimant argues the ALJ did not follow the law of the case in ignoring the District Court's instructions on remand, and that the ALJ mischaracterized the evidence she found to be inconsistent with Dr. Hurley's opinion.

The opinion of a treating physician is afforded controlling weight if it is both "well supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer 'good reasons' for discounting a treating physician's opinion." *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Stage v. Colvin*, 812 F.3d 1121, 1127 (7th Cir. 2016). Even where the ALJ chooses not to give a treating opinion controlling weight, she must still determine what weight to give the treating opinion. *Scott*, 647 F.3d at 740; *Campbell*,

627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ gave Dr. Hurley's opinion "minimal weight," finding it conclusory, poorly supported, and inconsistent with the medical record. (R. 519.) The ALJ's 2011 decision was remanded for failure to analyze Dr. Hurley's opinion in light of the factors as listed in 20 C.F.R. § 404.1527(c), specifically with regard to the length and frequency of treatment, Dr. Hurley's specialization, and his knowledge of Claimant's impairments. *Middleton*, 2015 WL 6859169, at *8-9. Moreover, the District Court found that the ALJ failed to make clear whether she considered Dr. Hurley's opinion in view of all of the other evidence in the record, and she failed to explain why Dr. Hurley's opinion was inconsistent with his own treatment notes. *Id.* The ALJ's second decision in 2016 repeats the paragraph from 2011 and adds a recitation of evidence that she found to be inconsistent with Dr. Hurley's opinion.

The *law of the case* doctrine requires that "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). The *law of the case* doctrine also applies to judicial review of

administrative decisions. *Id.* Therefore, the ALJ was required to conform with Judge

Kim's decision in further Social Security proceedings. *Wilder v. Apfel*, 153 F.3d 799,

803 (7th Cir. 1998). She did not do so here.

The 2016 ALJ decision still fails to address the factors in 20 C.F.R. §

404.1527(c). Indeed, Judge Kim previously took issue with the ALJ's failure to

"consider[] these factors explicitly." *Middleton*, 2015 WL 6859169, at *8. As Judge Kim

explained, Dr. Hurley is a neurosurgeon specialist who treated Claimant for six years,

and he treated her on at least eight different occasions during the relevant period. (R.

276-77, 282-83, 292-94, 394-95, 478, 483, 1131.) Moreover, Dr. Hurley diagnosed and

recommended plans of treatment, including medications, steroid injections, and physical

therapy. (R. 272-303, 427-51.) He also performed two fusion surgeries, referred

Claimant to a pain clinic, and collaborated with Claimant's other physicians. (R. 192,

258-60, 276-77, 376, 394-97, 436-39.) Yet the ALJ reiterated the same paragraph from

the 2011 decision. Her only addition was an analysis regarding the inconsistencies

between Dr. Hurley's opinion and his treatment notes. (R. 519.) No further analysis

was done regarding Dr. Hurley's specialization, his long history of treating Claimant, his

collaboration with her other physicians and specialists, or the many treatments he

recommended and provided for her.

The Commissioner argues that the ALJ's 2016 decision does not violate the *law

of the case* doctrine because the ALJ's prior opinion presented "a fairly close call" that

the ALJ rectified on remand by providing additional analysis of Dr. Hurley's medical

history with Claimant. However, the "fairly close call" to which the Commissioner cites

is Judge Kim discussing the credibility analysis, and the phrase "fairly close call" does

not apply to the treating physician analysis. *Middleton*, 2015 WL 6859169, at *6 ("Middleton's challenge to the ALJ's credibility analysis presents a fairly close call.") The Commissioner also argues that the ALJ recognized that Dr. Hurley was Claimant's treating neurosurgeon, and that this was enough to satisfy the requirement of considering the factors in 20 C.F.R. § 404.1527(c). However, the ALJ recognized that Dr. Hurley was a neurosurgeon in the 2011 decision[1], yet Judge Kim found that this was not enough to satisfy the factors in 20 C.F.R. § 404.1527(c). *Middleton*, 2015 WL 6859169, at *8-9. Instead, Judge Kim instructed the ALJ to discuss and analyze his specialization as a neurosurgeon, along with the length and frequency of the treating relationship with Claimant, and his knowledge of her impairments. *Id.* The ALJ, however, does not discuss the length and frequency of the treating relationship, even in the new portion of her analysis detailing medical evidence. (R. 519.) The ALJ's failure to follow the law of the case requires remand. *See, e.g., Daniels v. Colvin*, No. 15 C 9148 2016 WL 7116582, at *12 (N.D. Ill. Dec. 7, 2016) (finding that the ALJ's violation of the *law of the case* doctrine was grounds for remand). On remand, the ALJ shall consider and discuss Dr. Hurley's specialization as a neurosurgeon, length and frequency of treatment relationship with Claimant, and knowledge of Claimant's impairments.

Next, Claimant argues that even the portion of the decision that the ALJ added regarding Dr. Hurley's opinion is otherwise flawed and an impermissible selective recitation of the evidence. The ALJ lists multiple areas where Dr. Hurley's opinion is inconsistent with his own treatment notes and the medical record as a whole. The ALJ,

---

[1] The first four sentences of this paragraph in both ALJ decisions are exactly the same, and it is in this first sentence that the ALJ notes Dr. Hurley is a neurosurgeon.

however, impermissibly ignores evidence that supports Dr. Hurley's opinion, and mischaracterizes other evidence. *Moore v. Colvin*, 743 F.3d 118, 1123 (7th Cir. 2014) ("the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it"); *Golembiewski v. Barnhart,* 322 F.3d 912, 916-17 (7th Cir. 2003) (the ALJ's decision was "compromised by a mischaracterization of the medical evidence.").

Here, the ALJ states that the two cervical fusion surgeries resulted in significant improvement of cervical symptoms. (R. 519.) The ALJ points to symptom improvement, motor strength of 5/5, and "trivial" MRI results. However, the ALJ ignores other treatment notes which reflect absent right biceps, triceps, and left Achilles' reflexes, positive Faber testing on the right, and positive right straight leg raises. (R. 293.) Claimant also continued to complain of lower back pain, resulting in multiple rounds of imaging of her lumbar spine and hips. (R. 259-60, 273-74, 297-98, 411-14, 475, 479, 419-23, 479-82.) The ALJ correctly points out that these scans were noted to be "unremarkable" and "trivial," however, they also show straightening of the lumbar lordosis, lesions in the supralumbar spine and sacrum, scattered Schmorl's nodes, loss of signal within the disc spaces through the lumbar spine, loss of disc height, a disc bulge, persistent fact arthropathy and ligamentum flavum thickening, and mild central canal and bilateral recess narrowing. (R. 259-60, 273-74, 411-12, 479-82.) The ALJ fails to mention these findings from the same scans and ignores large portions of the evidence that contradict her findings. Moreover, while the ALJ states that an EMG was described as "unremarkable," the EMG was limited and incomplete due to the extreme swelling in Claimant's legs. (R. 488.) "An ALJ has the obligation to consider all relevant

medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010.)  While the ALJ does not need to mention every piece of evidence in a medical record, she must build a "logical bridge from the evidence to [her] conclusion." *Id.*  The ALJ did not do so here.  The ALJ ignored large portions of relevant evidence and mentioned only the portions that support her finding of non-disability.

### D. The ALJ's Evaluation of Claimant's Subjective Complaints Was Flawed and Failed to Comply with the Previous Court Ruling.

Claimant also takes issue with the ALJ's evaluation of Claimant's subjective complaints.  The Courts give the credibility determinations of ALJs deference based on their ability to hear, see, and assess witnesses.  *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012.)  An ALJ's credibility determination will only be overturned if it is patently wrong.  *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008.)  The ALJ must "explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011.)

Again, the ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.  *Goble v. Astrue*, 385 Fed. Appx 588, 593 (7th Cir. 2010). However, the ALJ need not mention every piece of evidence so long as she builds a logical bridge from the evidence to her conclusion.  *Id.*  In making a subjective complaint determination, the ALJ "may not disregard subjective complaints merely because they

are not fully supported by objective medical evidence." *Knight v.also Chater,* 55 F.3d

309, 314 (7th Cir. 1995).

In her 2011 decision, the ALJ found that Claimant's subjective allegations were

inconsistent with her work history, course of treatment, examination findings, and prior

statements.  (R. 574.)  Specifically, the ALJ stated that the medical record demonstrated

minimal evidence of her allegations of leg swelling and that there is no definite etiology.

(*Id.*)  On appeal, Judge Kim pointed to several places in the record where doctors noted

edema and swelling to disprove the ALJ's finding of "minimal evidence" to support

swelling in her legs.  *Middleton,* 2015 WL 6859169, at *6.  Notably, her primary care

physician, Dr. Penaherrera, observed lower extremity edema.  (R. 465.)  Claimant was

also prescribed "water pills" for her edema, and in July 2011 her legs were so severely

swollen that the swelling interfered with an EMG nerve conduction study.  (R. 71, 473-

74, 488.)  The District Court also noted that a lack of clear etiology "does not

necessarily undermine the symptom's severity, its impact on functionality, or the

credibility of the purported allegations."  *Middleton*, 2015 WL 6859169 at *6 (*citing*

*Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009)).

The ALJ's 2011 opinion also discredited Claimant's testimony regarding extreme

pain and physical limitations on sitting, standing, and walking, finding that "recent

medical records demonstrate conditions generally within normal limits and routine

treatment."  (R. 574.)  Judge Kim found that "the ALJ's assertion that [Claimant's]

medical records are essentially normal is difficult to square with the extensive evidence

documenting her attempts to get medical relief for her back and neck pain."  *Middleton*,

2015 WL 6859169, at * 7.  Judge Kim ultimately ruled that the ALJ failed to consider the

relevant factors in SSR 96-7p.  And more specifically, that the ALJ failed to properly consider Claimant's treatment history, how her treatments affected her alleged pain, and her persistent attempts to alleviate her pain.  *Id.*

In 2011, the ALJ also stated that Claimant put her own treatment on hold due to a heart attack when the medical record shows no heart attack.  (R. 574-75.)  However, Judge Kim found this inference unsupported, as the medical record shows that Dr. Hurley put Claimant's treatment on hold because he was concerned her chest pain was related to her spine.  (R. 389, 485.)  Judge Kim also noted that an ALJ cannot infer that a person is faking her symptoms simply because a physician cannot identify the cause of her pain.  *Middleton*, 2015 WL 6859169, at *7 (*citing Villano,* 556 F.3d at 562-63). Judge Kim instructed the ALJ to reassess Claimant's credibility and consider how it might affect the RFC determination.  *Id.*

Unfortunately, the ALJ's 2016 analysis of Claimant's subjective complaints repeats the same mistakes.  The Commissioner argues that "the court did not resolve any issues related to plaintiff's credibility or medical opinions" but instead instructed the ALJ to simply reassess her credibility.  (Dkt 15 at 4.)  While Judge Kim did instruct the ALJ to reassess Claimant's credibility, in the preceding paragraphs he identified three problem areas to address and resolve on remand.  The ALJ failed to resolve these three issues in her new assessment of Claimant's subjective complaints.  In fact, her analysis of Claimant's subjective complaints is nearly word-for-word the same as her 2011 decision.

The ALJ once again asserted that Claimant's leg swelling was not evidenced by the medical record, and cited to a lack of definite etiology as a reason to discredit her

complaints. (R. 518.) The Commissioner argues that the ALJ added a section on edema to step-two, which is enough to satisfy the District Court's instructions regarding edema. In that addition, the ALJ found the edema to be non-severe and stated that her legs have been swelling less since she changed her blood pressure medication. (R. 512.) The ALJ is relying on Claimant's testimony from the hearing in 2016, where Claimant stated that she was no longer having problems with swelling. (R. 534.) Claimant's date last insured was in 2012, and therefore any indication that her swelling had improved as of 2016 is irrelevant when Claimant's medical record showed severe swelling in July of 2011. (R. 488.) The ALJ again violated the *law of the case* doctrine when she found Claimant's subjective complaints unreliable due to a lack of evidence of leg swelling.

Judge Kim also instructed the ALJ to properly consider Claimant's treatment history, how her treatment affected her alleged pain, and her persistent attempts to alleviate her pain. *Middleton*, 2015 WL 6859169, at *7. However, the ALJ's discussion regarding Claimant's subjective complaints being inconsistent with her medical records is verbatim pulled from the 2011 decision, which Judge Kim determined was insufficient. The Commissioner directs the court to one paragraph earlier in the decision that addresses Claimant's treatment and how it affected her pain. In that paragraph, the ALJ discussed evidence regarding Claimant's MRIs and CT scans. (R. 514-15.) The ALJ points to language from the imaging that indicates good improvement, stable condition, and a lack of subluxation or instability. (R. 514.) However, this evidence amounts to cherry picking the record, as the same imaging revealed prominent disc bulging and left central intervertebral foraminal narrowing, which is not discussed or

analyzed. (R. 424.) Further imaging showed moderate central spinal stenosis, bony spurs, moderate right and left paracentral compression, moderate central spinal stenosis, and mild left neural foraminal stenosis. (R. 419-20.) The ALJ also points to records from 2009 showing only mild degenerative changes with no disc herniation, and a stable condition. (R. 515.) However, that set of imaging also showed mild osteophyte protruding to the right paracentral region, straightening of the normal lumbar lordosis, lesions in the spine and scrum, Schmorl's nodes, disc desiccation, mild disc height loss, and mild facet arthropathy. (R. 259.) The ALJ must consider all the relevant medical evidence. She may not choose the evidence that best supports her decision while ignoring the contrary evidence, especially evidence within the same sets of imaging. *Denton*, 596 F.3d at 425.

The ALJ also repeated her assertion that Claimant stopped her treatment due to an alleged heart attack which was unsupported by the record. (R. 518.) However, Judge Kim found that the ALJ's inference in this regard was unsupported. *Middleton*, 2015 WL 6859169 at *7. Judge Kim noted that when Claimant updated Dr. Hurley regarding her hospitalization, it appeared Dr. Hurley stopped Claimants treatment, and that he did so because he believed her chest pain was related to her spine rather than a heart attack. *Id.* Moreover, Claimant's chest pain cannot be dismissed solely because her cardiologist ruled it was not a heart attack. "[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562.

For all of these reasons, the ALJ violated the *law of the case* doctrine when she failed to address specific issues as instructed by the Court. On remand, the ALJ must

reassess Claimant's credibility, specifically with respect to the reasoning found faulty by Judge Kim.

### E.  RFC

Naturally, Claimant's argument regarding the RFC is intertwined with the ALJ's treatment of Claimant's subjective complaints.  Therefore, the Court will not address the RFC argument at this time.  On remand, the ALJ should take care to properly assess Claimant's RFC after reassessing the subjective complaints discussed above.

## III. Conclusion

For the foregoing reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied.  This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.  It is so ordered.

_____
**The Honorable Michael T. Mason
United States Magistrate Judge**

**DATED: September 14, 2018**